**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CURTIS JONES,

        Petitioner,

v.

THE ATTORNEY GENERAL OF THE
STATE OF NEW JERSEY, *et al.*,

        Respondents.

Civil Action No. 20-2945 (MAS)

**OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Petitioner Curtis Jones's Petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the Petition. (ECF No. 6.) Petitioner did not file a reply. For the following reasons, the Court denies the Petition and denies Petitioner a certificate of appealability.

**I.    BACKGROUND**

    In its opinion affirming Petitioner's conviction on direct appeal, the Superior Court of New Jersey, Appellate Division, summarized the factual background of Petitioner's conviction as follows:

> [Petitioner] shot and killed his cousin during a robbery in North Brunswick, New Jersey. Following the shooting, [Petitioner] traveled to Atlantic City, New Jersey, where he was apprehended by police.
>
> [Petitioner] was subsequently interviewed by a Middlesex County Prosecutor's Office Investigator and a North Brunswick Detective at the Atlantic County jail. There, he was informed of his

charges for murder, possession of a weapon, and robbery. The interview was recorded and played for the jury at trial.

[Petitioner] was read his [rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to the interview], and he signed a preprinted *Miranda* waiver card. [Petitioner] recounted the events that led to the shooting. He stated he was in the same apartment as the victim when he heard a window open and a gunshot. After hearing the gunshot, [Petitioner] ran out of the apartment. The interviewers then confronted [Petitioner] with contradictory evidence and asked if he was being truthful. This exchange followed:[]

Interviewer 1: I'm being straight with you, okay.

[Petitioner]: I'm straight with you too.

Interviewer 1: You're not.

[Petitioner]: Yes I am.

Interviewer 1: No you're not.

[Petitioner]: I need to talk to my baby's mom.

Interviewer 1: And at the end, and at the end of the day, excuse me?

[Petitioner]: I need to talk to my baby mom.

Interviewer 1: Well, who Ta Ta?

[Petitioner]: Latara.

Interviewer 1: Latara. Matthews?

[Petitioner]: Yeah.

Interviewer 2: Yeah[,] we spoke to her too.

[Petitioner]: I know.

Interviewer 2: I know you spoke, I knew if we spoke to her she would be speaking to you.

[Petitioner]: No[,] actually I didn't speak to her yet.

2

After this exchange, the interviewers continued to confront [Petitioner] about his account's inconsistencies and asked if his statements were truthful. This conversation then transpired:

[Petitioner]: I need to talk to my baby mom.

Interviewer 1: I have no control over that.

[Petitioner]: I'll tell you what you want to know.

Interviewer 1: What do you want to do, you want to call your baby's mom? Alright well listen, I, here's what's gonna have to happen. We're gonna have to take a break. Okay I got to stop this; I'm not allowed to have any conversation with you at all until we come back in here. And I'm gonna let you talk to your baby's mom privately, okay? Alright give me one second [to] see if I can arrange that.

Interviewer 2: I've been doing this a long time, I wouldn't lie to you man. Especially with something this important. I don't take this lightly. I ain't got any tissues.

[Petitioner]: (Inaudible) Unless I talk to my baby mom first.

The interviewers then stopped the questioning as [Petitioner] spoke with his child's mother in private. After [Petitioner] returned, the interviewers continued their questioning. [Petitioner] was informed "you still have your rights and the same rights that I read to you at the beginning of our interview is still in place at any time during this conversation if you like to exercise your rights you can right?" [Petitioner] responded "[y]es." [Petitioner] then recanted his earlier account of the events and admitted he shot the [victim]. [Petitioner] stated that the victim had taken money from him, and [Petitioner] returned to retrieve it. According to [Petitioner], the victim grabbed the gun and it went off.

[Petitioner] moved to suppress the statement he gave to police. [Petitioner] argued his requests to speak with his child's mother were invocations of his *Miranda* rights, and the interviewers should have ceased questioning him once he made this request. The trial court denied [Petitioner]'s motion, stating a request during questioning by an adult to speak to another adult does not imply or suggest that [the] individual desires to remain silent.

During [Petitioner]'s trial, but before deliberations, the trial court informed the parties that juror number three had sent a Facebook friend request to a Sheriff's Officer. The trial judge

3

>    questioned the Sheriff's Officer to determine whether this incident affected juror number three's ability to perform her duties. The Sheriff's Officer stated he did not know juror number three but admitted they shared a mutual friend. He stated he had denied juror number three's friend request, but then clarified that he accidentally accepted the request, but then immediately unfriended her. The Sheriff's Officer emphasized that he did not have any conversations with juror number three through Facebook during the proceedings.
>
>    The trial judge also questioned juror number three. She stated the Sheriff's Officer accepted her friend request. She stated she made a comment to him on Facebook stating "[g]reat detective work," but the Sheriff's Officer never responded. She explained the comment was unrelated to the case and was meant to tease a third-party. She confirmed she did not know the Sheriff's Officer previously, and the request was "completely social." The trial judge inquired whether her Facebook interaction would have any effect on her ability to be fair and impartial in the proceedings, to which she responded "[n]o."
>
>    The trial judge found the Facebook interaction between juror number three and the Sheriff's Officer was purely social, and he declined to remove her for cause. The trial judge also stated the Sheriff's Officer would no longer be assigned to wait at the jury room door to respond to questions or transport them. [Petitioner]'s counsel failed to object and deferred to the trial court's discretion. The trial judge then addressed the entire jury and reinstructed them not to discuss the case outside of the deliberation room.
>
>    At [Petitioner]'s sentencing hearing, [Petitioner] moved for a new trial. [Petitioner]'s counsel argued he should have asked for juror number three to be removed for disobeying and directly disregarding the court's instructions not to contact anyone in the courtroom. The court denied the motion, stating its original instruction only limited jurors from conversing with anyone about the case. The court stated its instruction did not prohibit ordinary social contact, and concluded juror number three's Facebook friend request was social and not inherently improper.

(ECF No. 7-1 at 3–8.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

### A. Petitioner's *Miranda* claim

In his first claim, Petitioner contends that the state court erred in refusing to suppress his confession to the detectives, arguing that his request to speak with his child's mother was an invocation of his *Miranda* rights. Under the rule established in *Miranda*, a statement made by a defendant during a custodial interrogation is inadmissible at trial unless the defendant is advised of his rights – that he has the right to remain silent, that anything he says can be used against him, that he has the right to an attorney, and that an attorney will be appointed for him prior to questioning if he so chooses – and "in fact knowingly and voluntarily waived [these] rights." *Berghuis v. Thompkins*, 560 U.S. 370, 380-82 (2010). Under the *Miranda* rule, to preserve the admissibility of a defendant's statements, police must cease questioning when one of these rights is invoked, but only if that invocation is unambiguous. *Id.* at 381-82. So long as a defendant does not unambiguously invoke the right to silence or the right to counsel, a statement will be admissible provided the record indicates that the defendant knew the nature of the right he was choosing to waive and voluntarily chose to forgo that right. *Id.* at 381-83. Waiver need not be made expressly or in writing, but need only be implicitly clear from the defendant's actions. *Id.* at 384.

In this matter, Petitioner made no explicit invocation of his rights, nor did he implicitly invoke his rights in an unambiguous manner. Instead, he merely asked to speak with a non-attorney third party before continuing his discussion with the detectives, a request which was granted. He did not imply a wish to cease speaking with the detectives, nor did he indicate a desire to speak with an attorney – he merely asked to speak with his paramour and directly stated that, after having done so, he was willing to continue to speak with the detectives. As Petitioner, therefore, made no unambiguous invocation of his *Miranda* rights, his statements made to the detectives after speaking with his child's mother were not subject to suppression under *Miranda*.

*Berghuis*, 560 U.S. at 381-84. The decision of the state court to deny Petitioner's suppression motion did not misapply or unreasonably apply applicable federal law, and Petitioner's *Miranda* claim serves as no basis for habeas relief.

### B. Petitioner's juror impropriety claim

Petitioner next argues that his right to an impartial jury was violated when a juror was permitted to remain on his jury panel after she made contact with a Sheriff's Officer on Facebook. In *Remmer v. United States*, 347 U.S. 227, 229 (1954), the Supreme Court held that because the right to an impartial jury is central to our justice system, in a criminal case,

> any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish . . . that such contact with the juror was harmless to the defendant.

As the Third Circuit has explained, however, courts should apply that presumption "only when the extraneous information is of a considerably serious nature." *United States v. Lloyd*, 269 F.3d 228, 238 (3d Cir. 2001). "In particular, [courts] have tended to apply the presumption of prejudice when a juror is directly contacted by third-parties." *Id.* Where the presumption is inapplicable, relief is warranted only where the defendant likely suffered substantial prejudice based on "an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror." *Id.* (internal quotations omitted).

In this case, the contact between the juror and a Sheriff's Officer was the harmless result of social contact between two individuals with mutual friends. Although the juror did make contact with the Officer, the Officer quickly removed the contact by "unfriending" the juror, and he did not respond to her jibes aimed at a third party. The testimony of the juror and the officer make it

7

clear that no discussion of Petitioner's trial or any related facts occurred, and the contact had nothing to do with Petitioner's case. The juror confirmed that the social media contact, which was purely social in nature, would not affect her ability to perform her duty to be impartial. Given the incidental nature of the contact in this case, the fact that the juror herself initiated the contact and the Sheriff's Officer wisely declined to respond and ended the contact pre-emptively, and the fact that it did not involve any issue related to Petitioner's trial, the *Remmer* presumption is inapplicable in this case. The contact was harmless and certainly did not have the capability to substantially prejudice Petitioner, especially in light of the evidence against him, including his confession. *Lloyd*, 269 F.3d at 238. As such, the state court's decision not to grant him a new trial was neither contrary to nor an unreasonable application of applicable federal law, and Petitioner is not entitled to habeas relief on this claim.

    **C.**    **Petitioner's Ineffective Assistance claims**

In his remaining claims, Petitioner contends that he received ineffective assistance of counsel. The standard applicable to claims of ineffective assistance of counsel is well established.

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of

8

> reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential [and] . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the [Petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his first ineffective assistance claim, Petitioner contends that his counsel erred in dissuading him from testifying on his own behalf. Although Petitioner contends that counsel did not "honor" his desire to testify, the record of the state court proceedings makes it abundantly clear that Petitioner, and not his counsel, ultimately made the decision not to testify on his own behalf. (*See* ECF No. 33 at 4-5; ECF No. 14-1 at 18-19.) Petitioner's contention that he wished to testify is thus contradicted by the record, and he therefore cannot make out an ineffective assistance claim premised on the idea that counsel prevented him from testifying.

9

To the extent Petitioner merely asserts that counsel poorly advised him that it was unwise to take the stand, Petitioner fails to make out a showing of prejudice. Petitioner admits that counsel explained that testifying on his own behalf would be unwise as Petitioner would be faced with his confessions both to police and to a family member, his criminal record, and any number of questions the state may choose to ask for which Petitioner may not be prepared, all of which are most certainly true. Any ability to show prejudice is further hampered by Petitioner's proposed testimony – Petitioner apparently wished to highlight for the jury that he had told both the police and his family member the "same" cover story prior to confessing to the crime in both instances. (*See* ECF No. 1-1 at 12-13.) This testimony would have been of dubious worth at best – Petitioner just as consistently *confessed* to the crime to both his family member and the police, and it is doubtful that any such testimony would have swayed the outcome of Petitioner's trial. Given the weak testimony of dubious significance Petitioner states that he would have offered, and the serious challenges Petitioner would have faced on cross-examination in the form of his past convictions and his dual confessions, counsel's advice that testifying would be unwise was neither deficient nor prejudicial. Likewise, Petitioner has utterly failed to show that he was prejudiced as a result of counsel's advice. Petitioner has thus failed to make out a basis for habeas relief on this claim. *Palmer*, 592 F.3d at 395.

Petitioner next contends that trial counsel did not adequately highlight the bias of the family member to whom he confessed, who Petitioner believes testified against him to avoid being returned to jail after breaching his parole conditions. The PCR court rejected this claim as the state elicited from this witness the fact that he was a sex offender and that part of the reason he was testifying was to avoid further jail time, and because Petitioner's counsel during cross and recross highlighted this bias by getting the witness to admit both that part of his statement to the police was untrue and that he chose to testify in the hopes of avoiding future imprisonment. (*See* ECF

10

No. 14-1 at 21-22.) Counsel thus *did* elicit information about the witness's bias, including that he had violated his parole terms and wished to avoid further prison time. Because counsel *did* cross examine the witness as to both his bias and his desire to avoid jail time, Petitioner cannot show he was prejudiced by counsel's cross-examination,[1] and the state court's rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*. Petitioner thus fails to set forth a valid basis for habeas relief in this claim.

Petitioner next contends that counsel proved ineffective in failing to seek the dismissal of juror number three, either for cause or through a peremptory strike during jury selection as a result of her admitting to knowing a prosecutor's office employee and a few police officers. The PCR judge, who also oversaw the trial, rejected this claim, explaining that:

> [i]n this case, the record clearly reflects that there was no basis for the trial court to excuse juror number three for cause. Juror number three was not a member of the law enforcement community, but rather a registered nurse. While juror number three disclosed that she went to college and was a family friend of Agent Ryan Tighe, employed by the Middlesex County Prosecutor's Office, she had not spoken to him in three years and did not know his specific job at the county prosecutor's office. Juror number three also explained that while she knew a few police officers, she did not socialize with them, and nothing about those relationships would affect her ability to be impartial.
>
> She then specifically was asked if her relationship with the individual that worked at the prosecutor's office would affect her ability to be impartial. She replied no. Later, at sidebar, trial counsel . . . specifically wished to discuss . . . "the woman who knows the guy in your office," referring to juror number three. The State responded to trial counsel that the individual in question was not an investigator but rather an agent. The State then continued that they did not have any reason to believe that the agent has any personal knowledge about this particular [Petitioner].

---

[1] While Petitioner also speculates that counsel should have cross-examined the witness as to a fight with his girlfriend and the fact that he was on some unspecified medication at the time of the incident, there is no evidence to support the assertion that the medication in question in any way affected the witness, or that the argument with the girlfriend was in any way relevant. Petitioner cannot show prejudice based purely on his own speculation. *Palmer*, 592 F.3d at 395.

11

> The Court added that she indicated that she has no contact with him. Trial counsel decided to proceed, stating, "As long as there's no appearance." The trial record indicates that there was no need to excuse juror number three for cause, or alternatively for trial counsel to use a peremptory challenge on juror number three. Therefore [P]etitioner has failed to establish a prima facie claim of ineffective [assistance of] counsel[.]

(ECF No. 14-1 at 23-24.)

This decision is neither contrary to nor an unreasonable application of *Strickland*. As noted by the PCR judge, although juror number three stated that she knew some police officers and had a college friend employed by the county prosecutor, she also directly stated that she was not friendly with the officers and had not spoken with her friend who worked at the prosecutor's office for a number of years. The PCR judge also noted there was no basis for a for cause juror challenge. Petitioner has likewise failed to show any prejudice stemming from counsel's failure to exercise a peremptory challenge – nothing Petitioner has submitted has in any way shown that this juror was partial or biased, or that the juror's presence on the jury in any way violated his rights. As the state courts did not unreasonably apply *Strickland*, Petitioner's habeas claim is without merit.

In his final claim, Petitioner contends that counsel proved ineffective in failing to move to strike juror number three prior to the verdict based on her Facebook activity described above. This claim fails largely for the same reasons as Petitioner's juror impropriety claim discussed above – there is no evidence that juror number three's presence on the jury in any way prejudiced Petitioner or that striking her from the jury would have in any way altered the outcome of Petitioner's trial. The juror's contact with a Sheriff's Officer was clearly harmless, and Petitioner provides nothing but speculation to support his contention that striking juror number three would have had any effect on the outcome of his trial. As such, Petitioner has failed to show *Strickland* prejudice from

counsel's failure to move to strike the juror prior to deliberations, and his claim fails as a result. Because Petitioner's claims are without merit, the Court denies his habeas petition.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V. CONCLUSION

Petitioner's habeas petition (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
